Commonwealth v. O'Donnell

*William H. Saye*, assistant district attorney, and *Huette F. Dowling*, district attorney, for Commonwealth.

*Robert E. Knupp*, for defendant.

KREIDER, J., May 11, 1953.—This case comes before the court on defendant's motions to quash and dismiss these proceedings. At the conclusion of the Commonwealth's testimony, defendant demurred to the evidence and this demurrer is also before us for disposition. The Commonwealth charges that defendant, Roland G. O'Donnell, made a false statement and concealed a material fact when he submitted his application for his 1952 Pennsylvania operator's license to the Department of Revenue in Harrisburg, Pa., by indicating on his application that his license had not been suspended or revoked and that he failed to indicate thereon his record of suspensions during the past three years preceding the date of the application. The applicable statute is section 620, subsec. (j), of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §231(*j*), which provides that:

"It shall be unlawful for any person to commit any of the following acts: (j) To use a false or fictitious name, or give a false or fictitious address, in any application or form required under the provisions of this act, or make a *false statement, or conceal a material fact*, or otherwise commit a fraud in any application." (Italics supplied.)

The information was made against defendant on October 6, 1952, by Stephen Richardson, a member of the Pennsylvania State Police, before Alderman D. W. Fahnestock in the City of Harrisburg, Dauphin County, Pa. The information sets forth that the alleged violation was discovered on September 29, 1952. On the day the information was filed, Alderman

Fahnestock mailed a registered letter to defendant at the latter's home in Shippensburg, Cumberland County, Pa., enclosing a notice in writing of the filing of the information, together with a copy thereof and a notice to appear within 10 days from the date of the written notice. These papers were received by defendant who, on October 16, 1952, appeared before the alderman in Harrisburg, waived summary hearing and posted bond for his appearance in the Dauphin County Court.

When the case came on for hearing in court but before testimony was taken, defendant's counsel moved to quash the proceedings on the ground that the transcript of the alderman was fatally defective in that it failed to set forth the fact of the filing of the information, the date when the information was filed and what the information contained; that neither the transcript nor the information set out that the magistrate was the nearest available magistrate to the point where the alleged violation occurred in accordance with section 1201 (a) of The Vehicle Code; that neither the transcript nor any of the papers in the hands of the district attorney showed that the information was returned by the alderman to the court within 15 days after the posting of bond by defendant in accordance with section 1204 (b) of The Vehicle Code, 75 PS §734 (b).

The court reserved its decision on defendant's motion to quash and proceeded to take the Commonwealth's testimony, at the conclusion of which defendant renewed his motion to quash and enlarged his objections further, contending that the Commonwealth had failed to show that the written statements which were the basis of the prosecution were made by defendant in the City of Harrisburg and County of Dauphin and that therefore this court had no jurisdiction of the case; that Alderman Fahnestock of the City of Harrisburg had no jurisdiction of the charge originally

since he was not the nearest available magistrate to the place where the alleged violation occurred; that the testimony of the Commonwealth showed that the Commonwealth had knowledge of the violation charged more than 15 days prior to the filing of the information and that therefore the prosecution was barred by the statute of limitations set up in section 1201 of The Vehicle Code; that the Commonwealth's testimony failed to show any direct knowledge on the part of the Commonwealth's witnesses of the violation charged and that the information having been made on direct averment and not on information and belief, was fatally defective.

### Testimony

The Commonwealth offered in evidence defendant's application for his 1952 Operator's License, on which the following appears: ·

"IMPORTANT. Were you involved in any accidents within or outside of this State while operating a motor vehicle during the twelve months preceding this application for license? (Yes or no) *No* if "YES"; GIVE DETAILS ON REVERSE SIDE.

"I hereby make application for 1952 operator's license and aver that my license or right to operate has not been suspended or revoked in this State or elsewhere and that I have no mental or physical incapacity except as follows: License suspended or revoked (No) (if during past 3 years, give reason, date and in what State) Mental or physical incapacity as follows ————— and I also aver that all statements in this application are true and correct.

Roland Odonnell"

State Patrolman Richardson testified that he called on defendant at the latter's home in Shippensburg and showed him a photostatic copy of his application for a 1952 operator's license and that defendant admitted that the answers and signature appearing thereon were his.

The Commonwealth also offered in evidence a document entitled: "Official Notification of Withdrawal of Motor Vehicle Privileges." This notification was issued by the Department of Revenue, Bureau of Highway Safety, and is signed T. E. Transeau, Director of Highway Safety, for Otto Messner, Secretary of Revenue. It sets forth on its face that the date of withdrawal of defendant's operator's license was July 27, 1950; that the term of withdrawal was "indefinite"; that his operator's privileges had been suspended and that defendant's license had been received in the department thereafter on August 23, 1950.

Norwood Keck, chief of the Safety Responsibility Division of the Pennsylvania Department of Revenue testified that the operator privileges of defendant are still under suspension, defendant's suspension having been effective, as stated, on July 27, 1950, less than three years prior to defendant's application filed on December 15, 1951.*

At the conclusion of the Commonwealth's testimony, the court reserved its decision on defendant's motions and ordered them placed on the argument list.

We will now proceed to discuss the various legal questions involved.

### Jurisdiction

*Where Was the Alleged Offense Committed?* Defendant's counsel in his brief states that it is defendant's contention that the making of the alleged false statement took place in Shippensburg, Cumberland County, Pa., and not in the City of Harrisburg, Dauphin County, Pa., and therefore this court has no jurisdiction of this case. Defendant resides in Shippensburg and resided there at the time his 1952 application was

---

* On cross-examination Mr. Keck testified that defendant had his operating privileges revoked previously, July 20, 1948, for one year, and again in 1946, each time for operating a motor vehicle while under the influence of intoxicating liquor.

·made and that is the place to which his license was addressed and sent by the Department of Revenue. Counsel for defendant frankly states he had been unable to find any case construing this particular section of The Vehicle Code, but relies on Commonwealth v. Held, a Lehigh County court decision, 16 D. &. C. 331, decided in 1930 by Judge Reno.

. In that case defendant was indicted for failing to report "the number of gallons of liquid fuel purchased, sold or used . . . during the preceding month", under the Act of May 1, 1929, P. L. 1037, sec. 8. Because that act provided that the dealer in liquid fuels was obliged to transmit the report to the Department of Revenue at Harrisburg, defendant argued that the crime of failing to report was committed in Harrisburg and that the Dauphin County court had exclusive jurisdiction of the offense. In rejecting this contention Judge Reno pointed out that: ·

"Here, the duty to report is enjoined in respect to certain gasoline stations; the reports are to be 'transmitted—from the respective places of business of such dealer or consumer': Section eight — in other words, irrespective of the residence of the dealer, the duty which the law has laid upon him relates to his 'place of business'. From there the report is to be transmitted and, to it, the sales and purchases there made, the report is to relate. It follows that the courts of that county have jurisdiction in which is located the corpus, the thing, in this instance 'the place of business' in respect to which something, in this instance a report, is required."

After stating the fundamental law that the county where the offense was committed has venue, Judge Reno observed that difficulty arises only in cases where the offense consists of several acts committed in various places, e.g., false pretense, forgery, embezzlement, abortion, conspiracy, and then states:

"The test in these border-line cases is: Where was the offense completed? But when, as here, the offense consists of an act omitted, the test is not always where was the act to be performed, or where was it to be completed. The question may well be where is the corpus, the thing or the person in respect of which the law requires something to be performed." We feel that Commonwealth v. Held does not support the defendant's contention in the instant case. In the Held case defendant was required by law to prepare and transmit a report from his place of business in Lehigh County. In the instant case defendant was required to do nothing whatsoever in Cumberland County. In the Held case the law was violated when defendant *omitted to prepare his report*. In the instant case we think the law was violated when defendant caused a false statement in writing to appear in the office of the Bureau of Motor Vehicles of the Department of Revenue at Harrisburg, Dauphin County, upon which written statement the department relied and issued an operator's license to defendant.

On this question the assistant district attorney cites no cases on point but does cite A. L. I. Restatement of the Law of Contracts, §§19-24 for the proposition that an offer to have any legal effect must be communicated by the offeror to the offeree. He contends that if defendant had not communicated his application to the bureau but retained or destroyed it, there would have been no *completed* offense and that the application had to reach the proper place in the bureau at Harrisburg before the offense was completed, and therefore Alderman Fahnestock had jurisdiction in this case because it is conceded by defendant that he is the nearest magistrate to the Bureau of Motor Vehicles. Independent research by the court, however, discloses the Dauphin County case of Commonwealth v. Johnson, 25 D. & C. 95, decided by President Judge Hargest in

1935. We feel that this case is squarely on point and supports the Commonwealth's contention that the Dauphin County court has jurisdiction in the instant case.

In that case it appeared that the Secretary of the Department of Revenue had sent a notice to defendant Johnson at the latter's home in Philadelphia that his privilege to operate motor vehicles had been withdrawn because of larceny in connection with the theft of a motor vehicle. The application containing the question, similar to the one in the instant case, whether defendant's privilege to operate a motor vehicle in this or any other state had ever been suspended or revoked, was answered "No". When prosecuted under section 620 of The Vehicle Code of 1929, as amended by the Act of 1931, subsection (j), 75 PS §231, defendant contended that if any false statement was made it was made in Philadelphia and therefore no offense had been committed in Dauphin County. In overruling defendant's contention President Judge Hargest states at page 99:

"If the defendant in this case had physically written a false statement in the form prescribed for applications, and after having done so had put the form in his pocket, would it have been an application? It did not become an application until he applied to have the thing done for which the form was prepared and executed. It is a trite saying that a criminal statute must be strictly construed, and we construe this statute strictly when we say that every paper in which a false statement is made is not an application. Our interpretation of the statute is that a paper containing a false statement does not become an application until it is used to move the department to grant the thing applied for. The application must be made to the department, and therefore, so far as anything appears in this case, it could not be made anywhere else than where the department is located, namely, in this county. It must be borne in mind the charge in this case is not perjury

but it is making a false statement contained in an application made to the department. The defendant swore to the paper in Philadelphia County. If he were charged with perjury another question would arise, but the charge is making an application with a false statement in it. Suppose, for instance, there were no affidavit required and he had executed the paper in Philadelphia County and carried it in person to the department in Dauphin County, could it for a moment contend that because he physically filled out the paper in Philadelphia the offense was committed there? *We definitely hold that using the application in this county, with a false statement in it, even though physically filled up and sworn to in Philadelphia County, gives this court jurisdiction."* (Italics supplied.)

Alleged defects in the Alderman's transcript.—Defendant contends that the alderman's transcript is fatally defective for the following reasons:

(a) The transcript fails to set forth that any information was filed, the date when the information was filed, or what the information contained.

(b) The transcript fails to set forth a requisite of the alderman's jurisdiction — that he is the closest available magistrate.

(c) The transcript fails to comply with the requirements of section 1204(b) of The Vehicle Code, 75 PS §734(b), in that it does not show the date on which the information was returned to court and whether or not such return was within 15 days of the posting of bond.

The alderman's "record" as returned to the office of the clerk of the courts in this case apparently consists of two sheets of paper, stapled together. The first is entitled "Information" which is in the usual form and sets forth that an information was filed, the date when it was filed and the charge against defendant from which we have already quoted. The "information" sheet also contains these words: "magistrate being in

and for City of Harrisburg in said County, being nearest available magistrate to the place of the violation." (Defendant concedes that Alderman Fahnestock is the nearest available magistrate if the offense charged was committed in Dauphin County and has withdrawn this reason from his motion to quash but nevertheless contends that its alleged omission renders the "transcript" fatally defective.) It appears to the court that the alderman intended and in fact did make the first sheet designated "Information" a part of his "transcript" or record when he permanently attached it to the second sheet. On the second sheet the alderman set forth again the caption of the case, Commonwealth of Pennsylvania v. Roland G. O'Donnell, defendant's address and the following matter:

"Charge of Violation Article VI, Section 620 Sub Section J. of the Vehicle Code on oath of Stephen Richardson, Penna. State Police.

"October 6th, 1952 registered letter was mailed to the defendant containing a notice in writing of the filing of the Information, together with a copy thereof and a notice to appear within ten days (10) of the date of the written notice. October 8th, 1952 Return Receipt card received signed by Roland O'Donnell acknowledging receipt of registered letter on October, 7th, 1952. And now on October 16th, 1952 defendant appeared and waived a summary hearing and posted bond for appeal in the amount of two hundred and seven dollars which represents twice the amount of the fine and costs that might be imposed.

"I hereby certify this to be a correct transcript from my docket in the above case.

"Witness my hand and official seal this 16th day of October 1952.

D. W. Fahnestock (Seal)
Alderman
My commission expires First Monday
in January 1956"

With respect to defendant's contention that the transcript does not show the date on which the information was returned to court and whether or not such return was within 15 days of the posting of bond, it is sufficient answer that the alderman, being a public official, is presumed to have obeyed the law and made his return within the period prescribed by the statute. The burden is on defendant to show that he did not do so: Commonwealth v. Deppen, 52 D. & C. 442.

In Commonwealth v. Lawell, 6 D. & C. 290, Miller, J., and in Commonwealth v. Recupero, 44 D. & C. 136 (1942), Pike Co., Shull, P. J., it was held that the provisions of The Vehicle Code requiring the magistrate to return the information to court within 15 days of the posting of the bond, are *directory* and *not mandatory*. In the Lawell case, the bond was posted August 29, 1924, a lapse of nineteen days. In the instant case defendant O'Donnell posted bond October 16, 1952, the hearing was held in court December 8, 1952, but there is no record of when the transcript was actually returned prior thereto.

As was said in the somewhat analogous case of Commonwealth v. Burall, 146 Pa. Superior Ct. 525, 528 (1941), "he [the defendant] certainly was not harmed by the alleged informalities or omissions in the record."

In the Burall case defendant was charged with driving a motor truck in the Borough of Greencastle that had a weight which exceeded that permitted by law. Defendant appeared before a justice of the peace with whom the information was lodged, waived a hearing, posted a bond and "took an appeal" to the Court of Quarter Sessions of Franklin County, where a hearing de novo was had. Defendant moved the court to dismiss the case alleging: (1) That the information and record of the justice of the peace failed to show that he was the nearest available justice within the municipal subdivision in which the alleged violation occurred;

(2) that the record of the justice of the peace failed to show that a notice to appear within 10 days and a copy of the information had been mailed to him as required by law. President Judge Davison denied the motion and adjudged defendant guilty. This judgment was affirmed by the Superior Court which held:

"In view of the defendant's waiving a hearing and taking an appeal to the quarter sessions he cannot successfully attack the magistrate's record on the grounds to which we have referred. These alleged omissions are but procedural irregularities, which did not affect the jurisdiction of the justice of the peace. The right to attack the record on technical deficiencies was surrendered by the defendant in taking his appeal: Commonwealth v. Hunter, 107 Pa. Superior Ct. 513, 164 A. 113; Commonwealth v. Scott-Powell Dairies, 128 Pa. Superior Ct. 598, 601, 602, 194 A. 684."

The Burrall case is distinguished but not overruled in Commonwealth v. Gill, 166 Pa. Superior Ct. 223 (1950). The latter case holds that the *jurisdiction* of a justice of the peace may be inquired into for the first time in the court of quarter sessions where defendant has waived a hearing before the justice of the peace and posted bond for appearance in court.

Since we have determined that the offense charged was committed in Dauphin County and it is conceded that Alderman Fahnestock is the nearest available magistrate to the place where the offense was committed, to wit: the office of the Department of Revenue, a valid attack upon the jurisdiction of the magistrate cannot be made. The alleged deficiencies in his record are merely "technical and procedural irregularities" and therefore defendant cannot take advantage thereof after he has posted bond to appear in the quarter sessions court.

In Commonwealth v. Strickland, 71 D. & C. 104

(1950) a speeding case arising in Bradford County, President Judge Rosenfield held that where defendant, after being taken before a justice of the peace, gave bail for his appearance at a specified time, he waived any irregularities in connection with his arrest, citing Commonwealth v. Hill, 166 Pa. Superior Ct. 388, 393 (1950), in which the Superior Court in a per curiam opinion adopted the opinion prepared by Judge Fine before his resignation, in which he concluded:

"Finally, appellant contends that his arrest was illegal in that it was not an arrest 'on view' within the meaning of the law. We need not pass upon this issue for appellant posted bond for a hearing. By so doing he waived any irregularities which might have existed in the arrest. In Commonwealth v. Gates, 98 Pa. Superior Ct. 591, this Court reviewed the many authorities considering the effect of entering bail for appearance. It is clear that an infirmity in the arrest, if any there was, should have been raised in a proceeding to be discharged; having posted bond for appearance such defects must be deemed to have been waived. See Commonwealth v. Keegan, 70 Pa. Superior Ct. 436."

In Commonwealth v. Maun, 68 D. & C. 288 (1949), in a well considered opinion by Sheely, P. J. of Adams County, it was held that where a defendant charged with speeding waives a summary hearing before a justice of the peace and gives bond for appearance for trial before a judge of the court of quarter sessions, he waives all objections to procedural irregularities in the magistrate's record, and may move to dismiss the proceedings in court *only* for objections *affecting the jurisdiction* of the magistrate, either as to subject matter or as to person; that one who voluntarily appears before a magistrate and enters bond for an appearance in court, thereby consents to the magistrate's jurisdic-

378

tion over his person and that any defect in the notice is but a procedural defect. Judge Sheely cites with approval the decision of President Judge Wright of Bedford County (now a member of the Superior Court) in Commonwealth v. Wentz, 52 D. & C. 690 (1945) and the decision of President Judge Knight in Commonwealth v. Greene, 40 D. & C. 546 (1940). (Montgomery County.)

*Was the Prosecution Barred by the Statute of Limitations?*—Section 1201 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §731 provides that:

"(a) Informations, charging violations of any of the summary provisions of this act, shall be brought before the nearest available magistrate . . . within fifteen (15) days after the commission of the alleged offense . . . and excepting further, that informations charging violations of the provisions of Sections . . . 620(j) . . . of this act *may be brought within fifteen (15) days after it is discovered that a violation . . . has been committed.*" (Italics supplied.)

Officer Richardson testified that it was on September 29, 1952, he received from his substation the request of Colonel Wilhelm, Superintendent of the Pennsylvania State Police, issued September 26, 1952, to investigate the facts which gave rise to this prosecution, that *as a result of his investigation* he brought this action on October 6, 1952, which is clearly within the requirement of the statute. The testimony of Norwood Keck, chief of the Safety Responsibility Division of the Department of Revenue, does not invalidate the prosecution brought by the direction of the Superintendent of the Pennsylvania State Police. Mr. Keck did not make any investigation in this case. In fact, he knew nothing about the filing of the information until two months thereafter when he learned of it three days before the case was heard in court. He was asked on crossexamination if he could tell from

his record whether an investigation was begun in this case on September 18, 1952. His answer was: "Yes, there was a *request* made *about* that time." Later he said that the discovery of the violation *could* have been as early as September 10, 1952, which apparently was the date of defendant's arrest in Fulton County on the charge of operating after suspension of his license, but Mr. Keck also testified that *he would not say directly* that his department had knowledge of some violation of The Vehicle Code *on that date,* and explained the circuitous route that a report of such a violation takes from the time the arrest is made until it reaches the Bureau of Highway Safety through the central office of the Department of Revenue. Mr. Keck had testified previously that the Fulton County arrest occurred September 23, 1952. He frankly said that he did not have any personal knowledge of all the information contained in defendant's file. When asked whether he knew from the records that defendant was prosecuted "recently", referring, we think, to the Fulton County prosecution, he replied: "Yes, but I didn't know it until the file was handed to me to come here.

"Q. Do you have personal knowledge from reading the folder or looking what it was, what the disposition was?

"A. I didn't pay much attention to it, no, sir, at the time I glanced at it *I figured it didn't pertain to this case.*"

Thus it is readily seen that Mr. Keck did not testify definitely as to the date the bureau of safety discovered defendant's false statements in his application for his 1952 license. If Mr. Keck's bureau, or any other bureau, knew this before September 26, 1952, when the Commissioner of the State Police ordered an investigation to determine that very fact, it would have been folly for the Commonwealth to have the State Police embark upon a useless investigation, the result of which would already have been known.

We fail to see how Mr. Keck's testimony helps defendant. The fact that defendant was arrested in Fulton County on September 26, 1952, or September 10, 1952, on a charge of operating after his license was suspended does not throw any light on the pivotal question in this branch of the case, to wit: When did the Commonwealth *discover that defendant had made a misstatement when he applied for his 1952 operator's license?* That "discovery" date has been fixed as September 29, 1952, by Officer Richardson, the only person designated by the Commonwealth to investigate the alleged violation. He testified:

"That is when I first had knowledge from the commissioner which led me to believe that there was a violation."

Defendant, by his admissions to the prosecutor on October 4, 1952 (two days before the filing of the information) finally confirmed the prosecutor's "belief."

Was prosecutor's direct averment of the violation in the information justified or should it have been based on "information and belief"?—Defendant's final complaint is that the information is made on direct averment and not on information and belief and that the testimony shows no direct knowledge on the part of the prosecutor. We disagree. Patrolman Richardson testified that on October 4, 1952, he interviewed defendant at the latter's home in Shippensburg and at that time showed him a photostatic copy of defendant's 1952 application for operator's license and asked him whether he recognized his signature on the application. Defendant replied that he did. He was then asked whether he noted that he had signed answers on that application, to which he replied that he did. He was asked whether he knew that his operating privileges had been suspended or revoked for any time within three years preceding the date of this particular ap-

plication and he said that he did and furthermore in substance told the officer that he wrote the word "No" on the application in answer to the questions which form the basis of this prosecution. On cross examination the prosecutor was asked what was the basis on which he made the statements set forth in the information and he replied: "Based on his [defendant's] admission", whose details have been set forth above. In view of the photostatic evidence and the admissions made by defendant, the prosecutor was justified in making his information on direct averment and it was not necessary for him to allege that he made it "on information and belief." As Judge Woodside, in discussing this subject, well said in Commonwealth v. Deppen, 56 Dauphin Co. 16 (1944) ; 52 D. & C. 442, 447 (wherein three prior decisions of this court were overruled) :

"The tendency is to become less technical, and the courts are becoming more reluctant to require the use of specific words in pleadings where no harm can result from the use of other than the customary language."

In view of the evidence adduced by the Commonwealth in this case, we feel that the rule long ago laid down by the Supreme Court of Pennsylvana in Commonwealth v. Burkhart, 23 Pa. 521 is appropriate.

"The courts are no longer astute in discovering defects in such proceedings: . . . and when the charge in the complaint and summons is so specific as to give the defendant fair notice of the substance, time, and place of the offense charged, as is done here, it ought to be regarded as sufficient."

And now, May 11, 1953, defendant's motion to quash and to dismiss these proceedings and defendant's demurrer to the evidence are hereby severally overruled. It is directed that this case shall be listed for further hearing and proceeded with according to law.